**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TUAN MINH BUI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-26-91-J |
| | ) | |
| PAMELA BONDI, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## <u>ORDER</u>

Petitioner filed a Verified Petition for Writ of Habeas Corpus [Doc. No. 1]. The matter was referred to United States Magistrate Judge Amanda L. Maxfield who entered a Report and Recommendation recommending that (1) the Verified Petition for Writ of Habeas Corpus be granted to the extent it requests habeas relief under 28 U.S.C. § 2241; (2) Respondents release Petitioner from custody immediately, under the terms of his previous Order of Supervision; and (3) Respondents certify compliance by filing a status report within five business days of the Court's order [Doc. No. 14]. The parties were advised of their right to object by March 13, 2026. *Id.* at 22. Respondents filed an Objection [Doc. No. 15] which triggers de novo review. For the reasons below, the Report and Recommendation is ADOPTED and the Petition is GRANTED to the extent it requests habeas relief under 28 U.S.C. § 2241.

## I.    <u>Background</u>

The essential facts are undisputed. In 1978, when Petitioner Tuan Minh Bui was eleven years old, he escaped Vietnam by boat. [Doc. No. 13-2]. From 1985 to 1997, Petitioner committed various crimes. He was sentenced to 180 days of probation for shoplifting, sentenced to fifteen years in prison for aggravated robbery with a deadly weapon, and was arrested for assault causing bodily injury but the charges were ultimately dismissed. [Doc. No. 15 at 4]. Due to his criminal

activity, Petitioner was placed in removal proceedings and ordered removed to Vietnam in 1998. *Id.* At that time, however, Vietnam was not accepting nationals who arrived in the United States before 1995, so Petitioner was released on an Order of Supervision in 2005. *Id.* at 4–5. On June 27, 2025, Respondents revoked Petitioner's Order of Supervision and re-detained him during a scheduled check-in appointment. [Doc. No. 1 ¶ 8]. There is no dispute that Petitioner was detained over six months when he filed his Petition on January 20, 2026.

In the Report and Recommendation, Judge Maxfield acknowledges Petitioner raised a due process claim under the Fifth Amendment and *Zadvydas v. Davis*, 533 U.S. 678 (2001), but declines to reach it, concluding instead that habeas relief is warranted due to Respondents' violation of the protections guaranteed by 8 C.F.R. § 241.4 and § 241.13. [Doc. No. 14 at 3, 21]. The Court agrees with Judge Maxfield's conclusion that Respondents violated 8 C.F.R. § 241.13. The Court also independently concludes that habeas relief is warranted because Respondents violated Petitioner's due process rights under the Fifth Amendment and *Zadvydas*.

### A. Jurisdiction

Respondents argue Petitioner's claims are barred because the Court lacks jurisdiction under 8 U.S.C. § 1252(g) over claims "arising from the decision or action by the Attorney General to . . . execute removal orders." [Doc. No. 15 at 6–7]. This Court has already joined the majority of courts finding that § 1252(g) does not strip this Court of jurisdiction. *E.g., Medina-Herrera v. Noem*, No. CIV-25-1203-J, 2025 WL 3460946, at *1–2 (W.D. Okla. Dec. 2, 2025); *Van Tang v. Grant*, No. CIV-25-1468-J, 2026 WL 321461, at *2 (W.D. Okla. Feb. 6, 2026). There are no arguments presented in either the Response [Doc. No. 13] or the Objection [Doc. No. 15] that alter the Court's conclusion. Accordingly, the Court ADOPTS the thorough and well-reasoned

conclusion in the Report and Recommendation that § 1252(g) does not bar this Court from exercising jurisdiction to consider Petitioner's challenge to his detention.

## B. Violation of Administrative Regulations

The Court is faced with two questions. First, which regulation applies: 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. Second, was the applicable regulation violated.

### 1. Which Regulation Applies

First, the Court is tasked with determining whether § 241.4 or § 241.13 applies. Although both regulations include provisions permitting Respondents to revoke an individual's Order of Supervision, there may be materially distinct requirements depending on which regulation applies.[1] Unable to definitively prove compliance with the notice and interview requirements in § 241.13(i)(3), Respondents instead attempt to evade § 241.13 altogether by arguing that § 241.4 applies. [Doc. No. 15 at 12 ("Respondents acknowledge that they could not determine whether Petitioner received an informal interview or a written Notice of Revocation of Release.")].

The starting point in determining which regulation applies is the regulatory text. Section 241.4 is the default rule. It governs detention of noncitizens subject to final orders of removal during the post-removal period and continues to apply by default. 8 C.F.R. § 241.4(a). By contrast, § 241.13 establishes "special review procedures" that are triggered after the expiration of the

---

[1] Respondents argue § 241.4(l)(2) grants ICE broad discretion to revoke an Order of Supervision without providing Petitioner with advance notice of the reason for revocation or a prompt informal interview upon return to custody. [Doc. No. 13 at 7–8; Doc. No. 15 at 12–13]. By contrast, there is no dispute that § 241.13 mandates exactly those procedures. Under § 241.13(i)(3), Respondents are required to provide Petitioner with notice "of the reasons for revocation" and "an initial informal interview promptly upon his or her return to Service custody" so that the individual has a meaningful opportunity, at a meaningful time, "to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241(i)(3). Because the Court grants relief based on other reasons, the Court expresses no opinion on the merits of Judge Maxfield's conclusion that, in the alternative, relief is also warranted because § 241.4(l)(2) can be interpreted in a way that requires procedural requirements such as notice and a prompt informal interview.

removal period and when there is good reason to believe that there is no significant likelihood the individual will be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(a). Both regulations cross-reference each other to reinforce this conclusion. For example, § 241.13(b)(1) states that § 241.4 "shall continue to govern the detention of aliens under a final order of removal . . . unless the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future." This result is mirrored in the text of § 241.4(b)(4), which states that § 241.4 does not apply "after the Service has made a determination, pursuant to the procedures provided in 8 C.F.R. 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future." In short, to determine which regulation applies, the Court must ask whether the framework in § 241.13 has been triggered because there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

In answering that question here, Judge Maxfield turned to Petitioner's Order of Supervision, which was granted in September 2005 and states that he was released "[b]ecause this Agency has not effected [his] deportation or removal during the period prescribed by law." [Doc. No. 14 at 10–11]. As Judge Maxfield notes, courts have concluded that this exact language signals the individual was released because the government made a determination that there was no significant likelihood of removal in the reasonably foreseeable future. *Lee v. Oddo*, No. CV 25-452J, 2026 WL 523154, at *3 n.5 (W.D. Pa. Feb. 25, 2026); *Hernandez-Castro v. Lyons*, No. 1:25-CV-01574 JLT SAB, 2025 WL 3771344, at *6 (E.D. Cal. Dec. 31, 2025).

That conclusion is also sensible given the particular facts presented here. First, Petitioner alleges he was placed on an Order of Supervision pursuant to 8 C.F.R. § 241.13 "due to evidence in [his] file that demonstrated there was no significant likelihood of his removal to Vietnam in the

4

reasonably foreseeable future." [Doc. No. 1 ¶ 4]. Respondents appear to agree, conceding "historic difficulty in acquiring travel documents from Vietnam for pre-1995 arrivals," which Respondents acknowledge would have been sufficient to demonstrate no significant likelihood of removal when Petitioner was released in 2005. [Doc. No. 13 at 11–12]. Finally, Respondents' only evidence to the contrary is the conclusory assertion that "Petitioner's Order of Supervision was issued under 8 C.F.R. § 241.4, and revocation was governed by § 241.4(l)(2)." [Doc. No. 13 at 22]. Respondents' conclusion is repeated, nearly verbatim, in the Objection without any additional analysis and both Declarations offered by Respondents are silent as to the reason for revocation. [Doc. No. 13-1; Doc. No. 15 at 12–13; Doc. No. 15-1]. Accordingly, the Court ADOPTS the conclusion in the Report and Recommendation that § 241.13 applies.

### 2. The Applicable Regulation was Violated

Having concluded that § 241.13 applies, the next issue is whether Respondents violated that regulation. As a preliminary matter, Respondents have wholly failed to provide any evidence to suggest they satisfied § 241.13(i)(3), which requires notice of the reasons for revocation and an initial informal interview promptly after the individual's return to custody. [Doc. No. 15 at 12 ("Respondents acknowledge that they could not determine whether Petitioner received an informal interview or a written Notice of Revocation of Release.")]. In the Objection, Respondents assert that Petitioner received notice via a "Notice to Alien of File Custody Review," which was served on Petitioner on September 8, 2025—approximately two months after Petitioner was taken into custody. The Court concludes such substituted notice, which appears to have issued under the requirements in § 241.4, is not sufficient under § 241.13(i)(3), which requires not just notice, but notice that specifies "the reason for revocation of his or her release." This error is not harmless because without this critical information, Petitioner was denied a meaningful opportunity, at a

meaningful time, to contest the revocation of his release.  *See also Li v. Bondi*, No. CIV-25-1480-J, 2026 WL 475133, at \*3 (W.D. Okla. Feb. 19, 2026).  Accordingly, the Court ADOPTS the conclusion in the Report and Recommendation that Respondents did not comply with § 241.13(i)(3).

Respondents have also failed to comply with § 241.13(i)(2), which states that Respondents may only revoke Petitioner's Order of Supervision "and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  The operative phrase in this context is whether Respondents have demonstrated "changed circumstances."

To meet that burden, Respondents offer both generic evidence regarding the removal of Vietnamese citizens and specific steps taken with respect to securing Petitioner's travel documents.  As to the former, both Petitioner and Respondents agree that Petitioner is subject to the 2020 Memorandum of Understanding (MOU) between the United States and Vietnam, which facilitates the repatriation of Vietnamese immigrants who entered the United States before 1995.[2]  [Doc. No. 1 ¶ 2; Doc. No. 15 at 5].  Although neither Party provided the Court with a copy of the MOU, Respondents assert it "allows for a case-by-case process review for determining . . . removal and issuance of travel documents."  [Doc. No. 15 at 5].[3]  Accordingly, Respondents allege "[t]he Government of Vietnam has issued travel documents for every travel document request . . .

---

[2]  Petitioner's arrival in the United States prior to 1995 is both historically and legally significant.  *See, e.g., Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 992 (C.D. Cal. 2018) (recognizing "ICE's allegedly longstanding practice of not removing pre-1995 Vietnamese immigrants").

[3]  The Western District of Washington has provided an instructive description of the 2020 MOU.  *See Nguyen v. Scott*, 796 F. Supp. 703, 714–15 (W.D. Wash. 2025).  The *Nguyen* court noted that, under the 2020 MOU, "when Vietnam concludes the eligibility criteria are met, it is expected to issue a travel document request within 30 days."  *Id.* at 715.

submitted since February 2025," Respondents have removed more than 500 Vietnam citizens since September 2025, and Respondents "are averaging at least two charter flights of removals to Vietnam per month." [Doc. No. 13 at 19; Doc. No. 13-1 ¶ 18].

Respondents further contend Immigration and Customs Enforcement (ICE) "is actively taking steps toward removing Petitioner" such as requesting Petitioner's travel documents and "moving that request forward through the bureaucratic 'case-by-case review process' according to the agreement between the governments." [Doc. No. 13 at 18 (citation omitted)]. Specifically, Respondents assert that Petitioner's travel document request has been pending since it was submitted to the Consular Section of Vietnam in Washington, D.C., on November 22, 2025—approximately five months after Petitioner was taken into custody. [Doc. No. 15 at 6; *see also* Doc. No. 13-1 ¶ 15; Doc. No. 15-1 ¶ 16]. Respondents have twice followed up on the status of Petitioner's travel documents, including inquiring as to the status on January 28, 2026, and forwarding the travel document request to the Vietnam attaché for processing on February 10, 2026. [Doc. No. 15 at 6; *see also* Doc. No. 13-1 ¶¶ 15–17].

In the Report and Recommendation, Judge Maxfield concludes this evidence, taken together, is not sufficient to show changed circumstances because: (a) the MOU was entered five years prior to Petitioner's re-detention; (b) Respondents' generic statistics regarding increased deportations of Vietnamese immigrants are not adequately contextualized; and (c) although Respondents have made incremental progress specific to securing Petitioner's removal, Respondents failed to submit the travel document request until nearly five months after Petitioner was detained and that request remains pending nearly three months later. [Doc. No. 14 at 13–14].

In the Objection, Respondents contend the five-month delay in issuing Petitioner's travel document request was "bureaucratic," not undue, because "there are many steps that must be

accomplished." [Doc. No. 15 at 10–11].   In support, Respondents offer the Declaration of Deportation Officer Michael Rangel to document those steps, including requesting Petitioner's Alien file (which is needed to proceed with a travel document request) shortly after he was re-detained, determining whether a travel document request is needed, identifying a potential Vietnam address in Saigon,[4] and preparing and serving the travel document request on Petitioner.  [Doc. No. 15-1].  While the Court accepts the delay was not due to inaction, it does not resolve Petitioner's core argument that there are significant defects preventing his deportation to Vietnam.  [Doc. No. 1 ¶ 22].

For example, Petitioner has remained in the United States since 1978 and alleges he has no familial ties to Vietnam, no proof of Vietnamese citizenship, no valid Vietnamese passport, and to the best of his knowledge, no Vietnamese birth certificate.  [Doc. No. 13-2; Doc. No. 1 ¶¶ 15, 38]. Without these materials, prior attempts to obtain travel documents have failed or resulted in no response from Vietnam.  *See* [Doc. No. 1 ¶ 57].  Indeed, the "Instruction Sheet to Detainee Regarding Requirement to Assist in Removal" issued to Petitioner on September 5, 2025, requests precisely the kind of documentation that Petitioner lacks.  [Doc. No. 13-2].  Yet Respondents have not offered any assurance that these gaps will not bar Petitioner's removal, nor do they identify any similar cases where removal succeeded despite such defects.[5]   Finally, the record shows

---

[4]  Respondents do not explain the source of this information.  Thus, the Court does not know whether this address is the last-known address attributable to Petitioner before he left Vietnam at eleven years old in 1978 or if the address is where Petitioner is expected to live after he is deported.

[5] Respondents rely on a Declaration to argue that many of the recently deported Vietnamese immigrants "are people in Petitioner's circumstances—Pre-1995 arrivals without travel documents."  [Doc. No. 13 at 19].  However, the Declaration narrowly states that the "majority" of Vietnamese immigrants removed since February 2025 "were citizens of Vietnam who entered the United States prior to 1995" without advancing Respondents' argument that those individuals faced comparable documentation deficiencies such as lack of passport, lack of proof of citizenship, lack of birth certificate, and lack of familial ties.  *See* [Doc. No. 13-1].

Respondents waited five months to initiate the travel document request, and Vietnam has still not responded months later. Absent such evidence, the Court cannot conclude that Petitioner's detention is tied to a realistically forthcoming travel document rather than one that may never issue.

Therefore, the Court joins the growing body of authority holding that Respondents have fallen short of establishing changed circumstances such that there is a significant likelihood of removal in the reasonably foreseeable future. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 722, 726 (W.D. Wash. 2025); *Qui v. Carter*, No. 25-3131-JWL, 2025 WL 2770502 (D. Kan. Sept. 26, 2025); *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025); *Nguyen v. Bondi*, No. CIV-25-1402-D, 2026 WL 396548 (W.D. Okla. Feb. 12, 2026); *Phu Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 686839 (W.D. Okla. Mar. 10, 2026).

### C.  Violation of Due Process under the Fifth Amendment and *Zadvydas*

For the same reasons articulated above, the Court also independently concludes that Respondents violated Petitioner's due process rights under the Fifth Amendment and *Zadvydas*.

In *Zadvydas*, the Supreme Court held that detention is permitted only for "a period reasonably necessary to bring about that alien's removal from the United States" and "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Zadvydas*, 533 U.S. at 689, 699.  The Court identified six months as a presumptively reasonable period, after which the noncitizen must show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.  The government must then "respond with evidence sufficient to rebut that showing" or release the individual. *Id.*

Here, Petitioner has met his burden.  He was previously released under an Order of Supervision in 2005 after removal could not be accomplished, and he presents substantial evidence

that Vietnam is unlikely to accept him due to the same unresolved deficiencies because he lacks familial ties, proof of citizenship, a valid passport, and a birth certificate. In attempting to rebut that showing, Respondents offer generalized evidence and specific steps Respondents have taken to secure Petitioner's travel documents, but do not meaningfully address these barriers or offer an assurance that they are no longer problematic. Respondents have also failed to offer any indication that Vietnam has responded, and the Court concludes such prolonged silence reinforces that removal is not significantly likely in the reasonably foreseeable future. *Qui v. Carter*, 2025 WL 2770502, at * 4 (D. Kan. Sept. 26, 2025) (noting "no activity in the last three months"); *Nfumu v. Grant*, No. CIV-25-1574-J, 2026 WL 637618, at *2 (W.D. Okla. Mar. 6, 2026).

## II.   Conclusion

The Court ADOPTS the Report and Recommendation [Doc. No. 14], GRANTS Petitioner's Verified Petition for Writ of Habeas Corpus to the extent it requests habeas relief under 28 U.S.C. § 2241, ORDERS Petitioner be released from custody immediately, subject to an appropriate Order of Supervision,[6] and ORDERS Respondents to certify compliance by filing a status report within five business days of the Court's order.

A separate judgment will enter.

IT IS SO ORDERED this 20th day of March, 2026.

_____
BERNARD M. JONES, II
UNITED STATES DISTRICT JUDGE

---

[6] The Court notes Judge Maxfield recommends release under the terms of Petitioner's previous Order of Supervision. The Court ADOPTS the recommendation as to release but MODIFIES it to permit Respondents to effectuate release under an appropriate Order of Supervision guided by 8 C.F.R. § 241.5, rather than requiring reinstatement of the prior order.